UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| DANIELLE M. WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-116-JRG-MCLC |
| | ) | |
| STATE OF TENNESSEE *et al.*, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Presently before the Court is a second amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 12] filed pro se by Petitioner Danielle M. White challenging her 2010 Tennessee state court conviction for two counts of aggravated assault.[1]  Respondent has filed an answer to the petition [Doc. 33] and a copy of the state court record [Doc. 34].  Petitioner has filed a reply to the answer [Doc. 44], along with a "second motion to take judicial notice and motion to grant habeas corpus petition" [Doc. 56].  For the following reasons, Petitioner's second amended § 2254 petition and second motion to take judicial notice and grant habeas corpus petition will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

## I.    PROCEDURAL HISTORY

---

[1] Section 2254(a) requires that an applicant be "in custody" at the time the writ is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  Petitioners who are on probation or parole at the time the petition is filed meet the "in custody" requirement.  *See*, *e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (parolee met "in custody" requirement because release was not unconditional).  In this case, Petitioner was on probation at the time the petition was filed and therefore meets the "in custody" requirement, even though her probationary sentence was set to expire in July of 2017.  *See DePompei v. Ohio Adult Parole Authority*, 999 F.2d 138, 140 (6th Cir. 1993) (petitioner's unconditional release from parole after the petition had been filed did not disturb the court's jurisdiction).

Petitioner was indicted by a grand jury in Greene County, Tennessee, on two counts of aggravated assault in violation of Tennessee Code Annotated § 39-13-102(a)(1)(B) [Doc. 34 Attachment 1 at 1–2]. Following a two-day trial, at which Petitioner represented herself, a jury returned a verdict of guilty on both counts [*Id*. at 71–72]. The trial court sentenced Petitioner to concurrent sentences of three years and six months with four months' incarceration [*Id*. at 84–85]. Petitioner, through retained counsel, filed a motion for new trial [*Id*. at 87–90] and a second amended motion for new trial [*Id*. at 99–104] which together asserted 71 errors. Following a hearing, Petitioner's request for a new trial was denied [*Id*. at 105].

Petitioner appealed her conviction and sentence to the Tennessee Court of Criminal Appeals ("TCCA") raising seven issues: (1) the trial court erred in failing to appoint counsel and in allowing her to represent herself; (2) the trial judge erred in failing to recuse himself and denying her a fair trial; (3) the grand jury foreman was not selected constitutionally because there was a systematic exclusion based upon gender, race, and ethnicity; (4) the indictment was invalid because no grand jury foreman was appointed; (5) the trial court erred in using a jury selection process that was not in accord with the relevant statute; (6) the trial court erred in denying the motion to suppress; and (7) there was prosecutorial misconduct when the assistant district attorney referred to Petitioner's invocation of her right to counsel [Doc. 34 Attachment 19]. The TCCA affirmed Petitioner's conviction and sentence and Petitioner's application for permission to appeal was denied by the Tennessee Supreme Court. *State v. White*, No. E2011-01817-CCA-R3-CD, 2013 WL 1788535 (Tenn. Crim. App. April 25, 2013) *perm. app. denied* (Tenn. Sept. 10, 2013).

Petitioner later filed a pro se petition for a writ of certiorari which the United States Supreme Court denied. *White v. Tennessee*, 134 S. Ct. 2701 (June 2, 2014). Petitioner did not seek post-conviction relief in the Tennessee state courts and her time to do so has expired. *See*

Tennessee Code Annotated § 40-30-102(a) and (b); *Seals v. State*, 23 S.W.3d 272, 276 (Tenn. 2000).

## II.     FACTUAL BACKGROUND

Petitioner's "crimes relate to her shooting at a utility company's contracted work crew as they sprayed herbicide on the right-of-way on her property" on July 27, 2009. *White,* 2013 WL 1788535, at *1. As an initial matter, the decision of the TCCA affirming Petitioner's conviction and sentence sets forth the circumstances relating to Petitioner's self-representation at trial as follows:

> The Defendant represented herself through the trial proceedings, despite the trial court's urging her to seek counsel. The Defendant claimed she could not afford counsel but refused to complete an affidavit of indigency, although the court repeatedly urged her to do so. The court released $10,000 of the Defendant's cash bond for her use in employing counsel, but she was unable to find counsel who agreed with her interpretation of the Constitution and did not retain an attorney. Shortly before the trial, the court appointed the public defender as advisory counsel. After the trial, the Defendant retained counsel, who represented her at the sentencing hearing and the motion for a new trial and who represent her in this appeal.

*Id*.

The opinion of the TCCA proceeds to a lengthy summary of the evidence presented at Petitioner's trial. *Id*., at *1–11. In pertinent part, the testimony of Paul Pridgen, one of the victims, was summarized as follows:

> Mr. Pridgen testified that the crew arrived at the Defendant's address around 7:10 p.m. and that it was daylight. He said that they had three trucks and that the crew consisted of four men with backpacks and a crew leader. He said David Caldwell, the application manager with Helena Chemical, Mike Boles, an employee of another chemical treatment company, and he were also present. He said that to his knowledge, the Defendant's address was not on the list of property that was not to be treated. He said that neither the Defendant nor her husband ever approached the crew on July 27 and said they did not want the property treated and that the crew should leave. He said that the Defendant's husband approached the crew leader and asked what they were doing, that the crew leader stated they were applying

3

herbicide, and that the Defendant's husband walked away without saying anything. He said he was standing by the crew leader and heard the conversation. He said the crew progressed through less than three feet of dense vegetation when he saw movement on a ridge about seventy-five yards away and heard a woman's voice say, "You can't spray no herbicide on my d——property." He looked up and saw the woman with a rifle. He said the woman leveled a gun at them and fired a shot. He heard the sound of rifle fire and of a shot whizzing by their heads. He said the bullet was close and scared him for his own safety and that of the crew. He stated that there was no question they were in imminent danger and that they left the property as quickly as possible. Mr. Caldwell called 9–1–1. He said that they regrouped at the bottom of a hill and that several Sheriff's deputies responded quickly. He drew and explained a diagram of the scene. He identified a rifle as appearing to be the same one he saw that day. He positively identified the Defendant as the woman he saw that day.

*Id.*, at *2.

The testimony of the other victim, David Caldwell, was summarized by the TCCA as follows:

[Caldwell] said that they were working around the Defendant's address and that as the work crew began applying herbicide to the right-of-way, a man came down the driveway and asked what they were doing. He said that the crew leader answered and that the man walked away without speaking. He said they continued working and saw a woman come to the top of the hill near the house. He said she was about seventy-five yards away. He said she asked what they were doing, and within twenty seconds, she lifted a rifle and fired a shot over their heads. He said that he had been walking toward the Defendant when he saw the gun and that he told the crew they had to leave when she fired. He said that the woman said, "Consider yourself warned," and that he replied, "We are gone." He said he called the police to report the shooting as they drove away. He identified the Defendant as the person who shot at him.

*Id.*, at *3.

After hearing testimony from a number of other State and defense witnesses as detailed in the TCCA opinion, the jury found Petitioner guilty of aggravated assault of Pridgen and Caldwell. *Id.*, at *11. To the extent additional facts and evidence as outlined by the TCCA are relevant to any claim raised by Petitioner in her § 2254 petition, they will be addressed below in the analysis of that specific claim.

4

# III.    STANDARD OF REVIEW

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, which amended § 2254, sets forth "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007).  By this standard, when a state court adjudicates a claim on the merits, habeas relief is available only if the adjudication of that claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court's ruling is an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from Supreme Court precedent but unreasonably applies it to the facts of the particular state prisoner's case. *Id*. at 407.  The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

Under the AEDPA, a habeas petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  This standard is "difficult to meet," "highly deferential," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington*, 562 U.S. at 102; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## IV.    ANALYSIS

Petitioner filed her initial § 2254 petition on April 9, 2014 [Doc. 1], then filed an amended § 2254 petition on June 25, 2014 [Doc. 8].  Noting several deficiencies in that amended petition, the Court directed the Clerk to send Petitioner a blank preprinted form on which to file her § 2254 petition [Doc. 9], and Petitioner subsequently filed the pending second amended petition [Doc. 12].

Like her original and first amended petitions, however, Petitioner's second amended § 2254 petition was not submitted on the standard form appended to the Rules Governing Section 2254 cases and the arguments in support of her claims are incorporated into the petition itself rather than in a separate memorandum or brief.  This convoluted drafting style makes it difficult to ascertain the precise nature of her constitutional claims, or even to determine the exact number.  In the answer [Doc. 33], Respondent lists 15 distinct grounds for relief raised in the 57 numbered paragraphs of the second amended petition, while the Court's review indicates there may be as many as 22:

1.    Defective indictment [Doc. 12 at ¶ 17];

2.    Unconstitutional exclusion of women from the grand jury process [Doc. 12 at ¶ 18];

3.    Failure of trial court to hold a hearing or rule on 11 motions [Doc. 12 at ¶ 19];

4.    Denial of right to counsel [Doc. 12 at ¶ 22];

5. Failure of trial court to dismiss case because Petitioner had a right to defend herself and her property [Doc. 12 at ¶ 24];

6. Denial of Petitioner's constitutional rights "under Article III" by the State of Tennessee [Doc. 12 at ¶ 25];

7. Withholding of information by State of Tennessee's "pesticide investigators" regarding pesticide contamination [Doc. 12 at ¶ 26];

8. Failure of State of Tennessee and the Environmental Protection Agency to prosecute Helena Chemical Company, Greeneville Light and Power and "S.F.E" [Doc. 12 at ¶ 27];

9. Denial of First Amendment right to associate with "persons of ill repute" [Doc. 12 at ¶ 28];

10. Denial of right to protect her property and the right to life, liberty and the pursuit of happiness [Doc. 12 at ¶ 29];

11. Failure to prove beyond a reasonable doubt that a crime was committed [Doc. 12 at ¶¶ 32, 37];

12. Denial of Fourth Amendment rights when gun was seized without a warrant [Doc. 12 at ¶¶ 32, 36];

13. Failure of State of Tennessee to "appear" at trial and failure to prove that Petitioner "appeared" [Doc. 12 at ¶ 33];

14. State of Tennessee lacks jurisdiction over Petitioner [Doc. 12 at ¶¶ 42, 53–54];

15. Denial of due process when the United States Supreme Court denied her petition for writ of certiorari without a hearing [Doc. 12 at ¶ 44];

16. Discrimination against women by State of Tennessee and its officials [Doc. 12 at ¶ 45];

17. Denial of equal protection because probationers not treated same as parolees [Doc. 12 at ¶ 46];

18. Denial of due process by being denied access to law library and legal documents [Doc. 12 at ¶ 47–50];

19. Failure of courts to swear on the Bible [Doc. 12 at ¶ 51];

20. Violation of Article III because Greene County Criminal Court was not ordained and established by Congress [Doc. 12 at ¶ 52];

21.     Denial of Second Amendment right to fire gun on her own property [Doc. 12 at ¶ 62]; and,

22.     Denial of right to compulsory process for obtaining witnesses [Doc. 12 at ¶ 64].

In addition, Petitioner has asked that the 71 errors raised in her motion for new trial, as well as the issues raised in her appellate brief to the TCCA, also be added to and included in her pending § 2254 petition [Doc. 12 at ¶¶ 15–16].

For the reasons set forth below, the bulk of the claims Petitioner now is attempting to assert easily may be dismissed as Petitioner did not exhaust them in state court. What remains are the seven claims raised by Petitioner to the TCCA on direct appeal. As will be shown, of those seven claims, three fail to state cognizable claims under § 2254 and three have been procedurally defaulted, leaving but one claim that was adjudicated on the merits in the TCCA for the Court to address on habeas review.

## A.     UNEXHAUSTED CLAIMS

Before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to her in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). Under Tennessee Supreme Court Rule 39, a Tennessee prisoner

exhausts a claim by raising it before the TCCA. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).

A federal court will not review claims that were not entertained by the state court due to the petitioner's failure to (1) raise those claims in the state courts while state remedies were available, or (2) comply with a state procedural rule that prevented the state courts from reaching the merits of the claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

Here, most of the claims that Petitioner attempts to assert never were raised properly in state court and therefore are unexhausted. Of the 22 identifiable claims set forth in Petitioner's second amended § 2254 petition, only 4 were exhausted by being fully and fairly presented to the TCCA on direct review: the indictment was defective (claim 1); the grand jury process unconstitutionally excludes women (claim 2); the denial of Petitioner's right to counsel (claim 4); and the denial of Petitioner's Fourth Amendment rights when the gun was seized without a warrant (claim 12).

Because Petitioner never presented claims 3, 5–11, or 13–22 to the TCCA on direct appeal from her judgment of conviction those claims are unexhausted and not reviewable by the Court under § 2254. Likewise, any of the 71 asserted errors alleged by Petitioner in her motion for new trial and amended motion for new trial which were not pursued on direct appeal have not been exhausted. Moreover, Petitioner is now precluded from raising any of those claims in a state post-conviction proceeding as the time for seeking such relief long since has passed. Tennessee Code Annotated § 40-30-102(a) and (b); *Seals v. State*, 23 S.W.3d 272, 276 (Tenn. 2000).

A petitioner who fails to raise her federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses

federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id*. at 750.

Here, Petitioner has asserted no cause for not raising any of the foregoing issues on direct appeal, and the only "cause" she asserts for not filing a post-conviction petition in the state court is that she does not recognize the State of Tennessee as having jurisdiction over her [Doc. 12 at ¶ 10]. Nor has Petitioner asserted, nor could she establish, prejudice arising from the procedural default of any of her asserted claims, as the majority of those claims are frivolous, non-cognizable in a habeas corpus proceeding[2] or otherwise meritless.

Moreover, Petitioner cannot establish "actual innocence" as an exception to the procedural default rule. The Supreme Court has held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). However, "actual innocence" is an extremely narrow exception, and "claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). This is not an extraordinary case.

Accordingly, because Petitioner failed to exhaust claims 3, 5–11, and 13–22 by fully and fairly presenting them to the state court, and she now is precluded from doing so, those claims have been procedurally defaulted. Moreover, since Petitioner has established neither cause or

---

[2] A number of the claims that Petitioner attempts to assert in her second amended § 2254 petition also were raised and rejected by the Court in three related cases that Petitioner brought pursuant to 42 U.S.C. § 1983 at Civil Case Nos. 2:14-CV-115, 2:14-CV-117 and 2:14-CV-118.

prejudice to excuse her procedural default of those claims, nor has she established her actual innocence, claims 3, 5–11, and 13–22 will be **DISMISSED**.

> **B.      CLAIMS RAISED ON DIRECT APPEAL**
>
> **1.      NON-COGNIZABLE CLAIMS**

Petitioner argued on direct appeal that the trial judge erred in refusing to recuse himself under the Tennessee Code of Judicial Conduct, and that the trial court erred in using a jury selection process that was not in accord with the relevant Tennessee statute [Doc. 34 Attachment 19]. The TCCA analyzed and denied both of these claims under Tennessee state law. *White*, 2013 WL 1788535, at *14–19. Although Petitioner did not specifically assert these two grounds for relief in her second amended § 2254 petition, she did request that the arguments raised in her appellate brief to the TCCA be "included" as grounds in her pending petition [Doc. 12 at ¶ 16]. Because Petitioner exhausted these two claims, the court will permit her to include them in her pending petition.

However, it is well-settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. Accordingly, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Here, Petitioner's claims that the trial judge violated the Tennessee Code of Judicial Conduct in not recusing himself and that the trial court violated a Tennessee statute relating to the jury selection process raise questions solely of state law and that previously were analyzed by the TCCA under Tennessee law. It is not this Court's province to re-examine these state-law

questions. *Estelle*, 502 at 67–68. Accordingly, to the extent Petitioner is attempting to raise these claims in habeas, they will be **DISMISSED**.

Petitioner's twelfth habeas claim set forth in her second amended § 2254 petition asserts a Fourth Amendment violation arising from the warrantless seizure of her rifle [Doc. 12 at ¶ 32, 36]. Petitioner raised this issue on direct appeal and argued further that the trial court erred in admitting the rifle as evidence at her trial [Doc. 34 Attachment 19]. The TCCA agreed that the warrantless seizure of the rifle violated the Fourth Amendment and determined that it should have been suppressed. *White*, 2013 WL 1788535, at *20–23. But, because the rifle "was not significant to the State's case," the TCCA concluded that "its admission into evidence was harmless beyond a reasonable doubt." *Id.*, at *23.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. However, "[b]ecause questions regarding the admissibility of otherwise relevant evidence seldom touch upon the "basic justice" of a conviction, the Supreme Court bars Fourth Amendment claims from habeas review." *Northrop v. Trippett*, 265 F.3d 372, 378 (6ᵗʰ Cir. 2001). Thus, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).

Here, Petitioner's Fourth Amendment claim was fairly and fully litigated in the TCCA. Accordingly, her claim that the rifle was unconstitutionally seized without a warrant and was improperly admitted into evidence is not cognizable in a federal habeas proceeding and Petitioner's Fourth Amendment claim therefore will be **DISMISSED**.

## 2. PROCEDURALLY DEFAULTED CLAIMS

Petitioner's first habeas claim asserted in her second amended § 2254 petition alleges that the indictment was defective because it was signed by a sheriff who did not witness the crime, rather than by the victims, and that it was not served or signed by a magistrate the night of Petitioner's arrest [Doc. 12 at ¶ 17]. Petitioner's second habeas claim alleges irregularities in the grand jury process because women allegedly are excluded from serving as foreman [Doc. 12 at ¶ 18]. Petitioner challenged the validity of both the indictment and the grand jury selection process on direct review, but the TCCA found both claims waived pursuant to Tennessee Code Annotated § 22-2-313 because Petitioner failed to object prior to trial. *White*, 2013 WL 1788535, at *18-19.

If a § 2254 claim is barred from review because of a violation of a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Here, the TCCA invoked the state procedural rule set forth in Tennessee Code Annotated § 22-2-313 as the basis for declining to review Petitioner's challenges to the validity of the indictment and to the selection of the grand jury. Accordingly, Petitioner has procedurally defaulted those claims. As Petitioner has failed to assert or establish cause and prejudice to excuse her default, the first and second habeas claims set forth in her second amended § 2254 petition will be **DISMISSED**.[3]

### 3.     DENIAL OF RIGHT TO COUNSEL CLAIM

---

[3] The TCCA also declined to consider on direct appeal Petitioner's claim of prosecutorial misconduct because she failed to identify or describe the alleged wrongful conduct. *White*, 2013 WL 1788535, at *23. Although Petitioner requested a blanket incorporation of the claims asserted in her appellate brief to the TCCA on direct review, she has not set forth an explicit claim of prosecutorial misconduct in her second amended § 2254 petition nor further elaborated on the nature of that alleged misconduct. Accordingly, Petitioner is not entitled to relief on any claim of prosecutorial misconduct.

Petitioner's fourth habeas claim is that she was denied her constitutional right to counsel [Doc. 12 at ¶ 22]. Specifically, she claims that she was "never asked" if she wanted counsel, that she was "never offered a choice," that she was "forced into representing herself," and that she never signed a waiver of counsel [*Id*. at ¶ 30; Doc. 44 at p. 3].

Petitioner argued on direct appeal that the trial court erred in failing to appoint counsel and in allowing her to represent herself [Doc. 34 Attachment 19 at 22–29] and the TCCA adjudicated the claim on the merits. The TCCA held that Petitioner "was not entitled to appointed counsel when her actions thwarted the court's attempts to determine her indigency status in order to appoint counsel," that "the trial court did not err in [not] conducting a detailed indigency hearing," and that Petitioner "asserted her right to represent herself." *White*, 2013 WL 1788535, at *12–13. Respondent argues that the decision of the TCCA is entitled to deference under § 2254(d).

## a.     APPLICABLE LAW

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to assistance of counsel is made obligatory on the states by the Fourteenth Amendment and an indigent defendant has the right to have counsel appointed for her. *Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963).

The Sixth and Fourteenth Amendments also guarantee the corollary right to waive counsel and to proceed pro se. *Faretta v. California*, 422 U.S. 806, 807 (1975). When an accused chooses self-representation, she necessarily relinquishes "many of the traditional benefits associated with the right to counsel." *Id*. at 835. Accordingly, "in order to represent [her]self, the accused must 'knowingly and intelligently' forgo those relinquished benefits" and "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that '[s]he knows

what [s]he is doing and [her] choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (waiver of right to counsel is valid only when it "reflects an intentional relinquishment or abandonment of a known right or privilege").

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948). The Supreme Court has not, however, "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Rather, "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* As to waiver of trial counsel, the Supreme Court has said that before a defendant may be allowed to proceed pro se, she must be "warned specifically of the hazards ahead." *Id.* at 88–89. Accordingly, "warnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]' conveyed." *Id.* at 89 (quoting *Patterson v. Illinois*, 487 U.S. 285, 298 (1988)).

In a collateral attack, it is Petitioner's burden to prove that she did not competently and intelligently waive her right to counsel. *Tovar*, 541 U.S. at 92.

### b.  TCCA DECISION

The TCCA summarized the facts relating to Petitioner's decision to proceed to trial pro se as follows:

The record reflects that the Defendant represented herself until the sentencing hearing and the motion for a new trial, at which point she was represented by retained counsel. The Defendant refused to complete an affidavit of indigency before the trial, even after the trial court explained that the affidavit was required before counsel could be appointed. The Defendant told the court she could not afford counsel, and the court released $10,000 of her $20,000 cash bond for her use in employing counsel. The Defendant later reported to the court that she had not retained counsel because she could not find counsel who would represent her for a reasonable fee. When asked if she could not find a lawyer to represent her for $10,000, she stated that she was invoking her Fifth Amendment rights. She also expressed her objection to the constitutionality of the court's requiring her to complete the form. The court repeatedly urged the Defendant to retain counsel or complete the affidavit of indigency, but the Defendant failed to do so.

After the Defendant failed to retain counsel with the $10,000 the trial court released, the court reinstated the Defendant's bond to the original amount. The court advised the Defendant that it was necessary for her to complete the form in order for it to assess her indigency status and determine whether she qualified for appointed counsel. When asked whether she wanted to complete the form, she said she did not. She said that she would represent herself but that her decision was not voluntary because the court instructed her to complete the affidavit if she wanted appointed counsel. The record reflects that at one point before the trial, the Defendant partially completed an affidavit but did not sign it because the numbers she listed were approximate and she did not think some of the information requested was relevant. After numerous occasions when the court encouraged the Defendant to complete the affidavit or hire counsel and explained the gravity of her situation and the process for obtaining appointed counsel, the court appointed the public defender to act as advisory counsel for the Defendant at the trial. The Defendant still had not completed an affidavit of indigency, and the court assessed a $500 fee for the public defender's services, to be collected from the Defendant's cash bond at the end of the case.

*White*, 2013 WL 1788535, at *11.

## c. DISCUSSION

The starting point for cases subject to § 2254(d)(1) is to identify the "clearly established Federal law, as determined by the Supreme Court of the United States" that governs the habeas petitioner's claims. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (quoting *Williams*, 529 U.S. at 412). As the Supreme Court has reiterated, "[C]learly established Federal law for purposes of §

2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citation omitted).

The Court's first task then is to determine whether the TCCA unreasonably found that Petitioner was not denied her constitutional right to counsel. Initially, contrary to Petitioner's apparent belief, the Sixth Amendment only guarantees *indigent* defendants the right to *appointed* counsel. *Gideon*, 372 U.S. at 344 ("any person haled into court, who is too poor to hire a lawyer, cannot be assured of a fair trial unless counsel is provided for him"). Otherwise, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though [s]he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989).

Obviously, then, in order to be entitled to appointed counsel, an accused must first establish that she is indigent. There is no "clearly established Federal law, as determined by the Supreme Court of the United States" regarding eligibility for court-appointed counsel. Rather, in most jurisdictions eligibility is determined by statute. In federal court, for example, 18 U.S.C. § 3006A(b), provides that when a defendant appears unrepresented and does not waive counsel, "the court, *if satisfied after appropriate inquiry that the person is financially unable to obtain counsel*, shall appoint counsel to represent him." (emphasis added).

In the absence of clearly established federal law on the issue of financial eligibility for appointed counsel, the Court must determine whether the decision of the TCCA that Petitioner failed to show under Tennessee law that she is indigent, and therefore was not entitled to appointed counsel, was "based on an unreasonable determination of the facts in light of the evidence

presented." 28 U.S.C. § 2254(d)(2). The Court cannot find that the decision of the TCCA was unreasonable in this case.

In Tennessee, eligibility for court-appointed counsel is governed by Tennessee Code Annotated § 40-14-202(b) which requires, *inter alia*, that the accused's statements as to financial ability shall be by sworn testimony in court or by sworn affidavit. Here, Petitioner repeatedly refused to complete an affidavit of indigency to establish her eligibility for appointed counsel. Because Petitioner's own "actions thwarted the court's attempts to determine her indigency status in order to appoint counsel," the TCCA concluded that the trial court did not err in finding her ineligible for appointed counsel, *White*, 2013 WL 1788535, at *12, and this decision is not an unreasonable determination of the facts in light of the evidence.

The real crux of Petitioner's claim then is her allegation that she did not voluntarily waive her right to counsel. In addressing this claim, the TCCA identified *Faretta* as the appropriate standard and applied it in a reasonable manner in concluding that Petitioner voluntarily asserted her right to represent herself. *Id.*, at *13. In so finding, the TCCA explained:

> The record reflects that before the trial, the court questioned the Defendant about her legal and procedural knowledge, experience representing herself, the charges against her, the potential sentences, the fines if convicted, and her privilege not to testify. Despite the court's extensive efforts to get the Defendant to accept the assistance of counsel, the Defendant was not cooperative with the court, stated that the attorneys she interviewed did not meet her expectations and did not charge a reasonable fee, and indicated her preference to represent herself. It is apparent from the record that she would not sign the written waiver and wished to proceed pro se, rather than complete the affidavit of indigency or retain counsel.

*Id.*

Based on the foregoing, the Court cannot find that the TCCA's decision that Petitioner voluntarily waived her right to counsel and asserted her right to proceed pro se was contrary to, or an unreasonable application of, federal law relating to the Sixth Amendment right to self-

representation. The record shows that Petitioner was "warned specifically of the 'dangers and disadvantages of self-representation,'" *Faretta*, 422 U.S. at 835, and that she made her choice "with eyes open." *Adams*, 317 U.S. at 279.

The record in this case reflects that Petitioner was advised repeatedly of her right to counsel, was offered many opportunities to establish her eligibility for appointed counsel and even had half of her cash bond released to permit her to hire an attorney of her own choice. Nevertheless she refused to complete an affidavit of indigency or to find an attorney of her own choosing, and clearly expressed a preference to proceed pro se. Moreover, despite her failure to show indigency, the trial court nevertheless appointed the public defender to aid her at her trial. Under the circumstances, Petitioner has not met her burden of showing that she did not competently and intelligently waive her right to counsel, *Tovar*, 541 U.S. at 92, or that in any way she was denied her right to counsel as guaranteed by the Sixth and Fourteenth Amendments. *See*, *e.g.*, *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (waiver of right to counsel occurs when the record shows that an accused was reasonably offered counsel but understandingly rejected the offer). The Court is satisfied that the TCCA's decision is not objectively unreasonable.

Under the deferential standard of the AEDPA, the Court finds that the decision of the TCCA that Petitioner failed to establish indigency was not an unreasonable determination of the facts in light of the evidence, and that the TCCA's decision that Petitioner clearly and unequivocally asserted her right to self-representation is neither contrary to, nor an unreasonable application of, federal law as established in *Faretta*. Accordingly, Petitioner's fourth habeas claim alleging the denial of her right to counsel will be **DISMISSED**.

## V.    "SECOND MOTION TO TAKE JUDICIAL NOTICE"

Also pending before the Court is Petitioner's "second motion to take judicial notice and motion to grant habeas corpus petition" [Doc. 56]. As with her first "motion to take judicial notice" [Doc. 41], which the Court denied in a previous Memorandum Opinion [Doc. 45], Petitioner's pending motion consists of baseless, outlandish statements primarily designed to show that Petitioner does not fall under the jurisdiction of anyone but herself.

Among Petitioner's fanciful assertions are that: the United States is a corporation owned by the British Crown; that the United States, the State of Tennessee and Greene County are operating under the Uniform Commercial Code ("UCC") rather than the common law and Constitution and therefore her arrest and arraignment are "invalid on dry land;" that Petitioner is not the "property" of the United States or the State of Tennessee; that she objects to the spelling of her name in all capital letters; that she is a "prisoner of war" being illegally detained by Tennessee, Virginia, and the United States; that this judge of the Court, along with all other judges involved in this case, are agents of the firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, which is counsel to Israel; and, that on the night of July 27, 2009, Petitioner was "attacked on my own property via chemical warfare unleashed by Helena Chemical Company and their illegal Honduran terrorists and South Carolinian agents alleged to be working for ROTHSCHILD'S of ISRAEL and their counsel, Baker" [Doc. 56 at 1–3]. Petitioner requests: that the Court take judicial notice that unless it and "any other entity operating in America" can prove they are not a corporation, they do not have jurisdiction; that the Court provide proof of identity, appointment and oath; that a decree be issued acknowledging that Tennessee, Virginia and Herbert Slatery III, Tennessee's Attorney General, hold no jurisdiction over her; and that this case be transferred to the Supreme Court for retrial or dismissed for lack of jurisdiction [*Id*. at 4–5].

Initially, contrary to Petitioner's assertions, this Court indisputably has jurisdiction over Petitioner's § 2254 petition pursuant to § 2254(a) which explicitly authorizes a district court to entertain such applications. Furthermore, Petitioner's repeated request that the Court take judicial notice that the State of Tennessee and the Greene County Criminal Court had no jurisdiction over her criminal conduct is legally and factually frivolous. First, Tennessee had personal jurisdiction over Petitioner at the time of the offense as she resided in the state and "all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." *See, e.g., Allah El v. District Attorney for Bronx County*, 2009 WL 3756331, at * 1 (S.D.N.Y., Nov. 4, 2009).[4]

Moreover, the basic requirement of territorial jurisdiction, which recognizes the power of a state to punish criminal conduct occurring within its borders, is embodied in the United States Constitution itself via the Sixth Amendment right to a trial "by an impartial jury *of the State and district wherein the crime shall have been committed*." U.S. Const. amend. VI (emphasis added). The Tennessee Constitution likewise recognizes the right to a trial by an impartial jury "*of the County in which the crime shall have been committed*," establishing the territorial jurisdiction of the Greene County Criminal Court over Petitioner's crime. Tenn. Const. art. I, § 9 (emphasis added); *see also State v. Legg*, 9 S.W. 3d 111, 114 (Tenn. 1999).

Because the State of Tennessee and the Greene County Criminal Court clearly had personal and territorial jurisdiction over Petitioner at the time the offense was committed, her request that the Court take judicial notice of the fact that they did not is patently frivolous. Moreover, this

---

[4] Although Petitioner suggests that she does not fall under the jurisdiction of the "corporation USA," presumably the corporation owned by the British Crown and operating under the UCC [Doc. 56 at ¶¶ 1, 7], she has stopped short of declaring that she is not a United States citizen, and she clearly has shown no hesitation in asserting her own constitutional rights as a United States citizen.

Court plainly has jurisdiction over Petitioner's § 2254 petition by the very terms of the statute, and the Court is under no obligation to establish its identity or credentials in order to preside over Petitioner's case, which, incidentally, she herself brought *in this Court*. Accordingly, Petitioner's second motion to take judicial notice and motion to grant habeas corpus petition will be **DENIED**.

## VI. CONCLUSION

For the reasons set forth herein, the Court finds that none of Petitioner's claims warrant the issuance of a writ of habeas corpus. Accordingly, Petitioner's second amended § 2254 petition [Doc. 12] and second motion to take judicial notice and grant habeas corpus petition [Doc. 56] will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE**

## VII. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2254 case only if she is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner whose claims have been rejected on a procedural basis must demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*; *see also Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

Here, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to any of her claims. Specifically, jurists of reason would not debate

the Court's finding that Petitioner failed to exhaust and procedurally defaulted the majority of her claims, nor that several of her claims are non-cognizable in habeas. Nor has Petitioner shown that reasonable jurists would find the Court's assessment of Petitioner's remaining constitutional claim debatable or wrong. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE